UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| BRANDON LEE BRACKENS,<br>*Plaintiff* | CIVIL ACTION |
|---|---|
| VERSUS | NO. 19-13454 |
| STERICYCLE, INC., ET AL.,<br>*Defendants* | SECTION: "T" (1) |

## ORDER AND REASONS

Before the Court is the Motion to Dismiss filed by Stericycle, Inc., Brian Demarest, David Faletta, and Christopher David Perez. (Rec. Doc. 16). Defendant Brandon Arceneaux, Sr., has joined the motion. (Rec. Doc. 37). For the following reasons, the Motion to Dismiss is GRANTED; the Complaint of Brandon Lee Brackens against Stericycle, Inc., Brian Demarest, David Faletta, Christopher David Perez, and Brandon Arceneaux, Sr., is hereby dismissed with prejudice.

## Background

Plaintiff Brandon Lee Brackens filed this lawsuit against his former employer, Stericycle, Inc., and a number of Stericycle employees on November 6, 2019, asserting claims for employment discrimination under Title VII, defamation, and intentional infliction of emotional distress. Brackens worked for Stericycle as a Route Swing Driver. He complains that he was not properly trained and had to learn the job on his own. He alleges that he asked his supervisor, Christopher David Perez, to ride with him, but Perez refused and stated that everything is "pretty easy." Brackens alleges that around July 2018, another swing driver, Brandon Arceneaux, Sr., began telling the supervisors that he would not run his routes and claiming that he hurt his back on the job. Brackens contends that Arceneaux was only playing hurt, yet, Brackens complains, Perez allowed Arceneaux to come to work and sit on the clock while Brackens was required to run

1

his routes. He alleges that Perez, supervisor Brian Demarest, and Arceneaux were plotting to terminate him. Brackens alleges that Perez would switch Brackens' routes for no legitimate reason. Brackens further complains that he was harassed and mistreated almost every day and that he was persecuted for his mistakes. He alleges that Perez has written him up several times without cause. He complains that his hours were cut. At other times, he was overloaded with work. He alleges that his vehicle was vandalized.

He alleges that he filed a complaint with Human Resources regarding the "misconduct supervision/employee situations that became retaliation." Thereafter, Human Resources arranged a "SWING DRIVERS MEETING ONLY." Brackens asserts that instead of all swing drivers, only three were summoned to the meeting and its purpose was to single out the person who anonymously filed a complaint with Human Resources. Brackens alleges that the Human Resources representatives told him there would no retaliation as a result of the meeting, but he alleges that "[s]ince then, my hours was not applying to me in a 5-day period." He also complains that he was required to sit in the parking lot for 5-6 hours with no communication from his supervisors. He alleges he was harassed and retaliated against for filing the complaint with Human Resources. He alleges he has been followed, stalked, and harassed in the early morning by management and co-workers, lingering about when he clocks in and out. He also alleges that a few drivers from the job have stalked his place of residence: one driver saw Brackens leaving his residence and mentioned this to Brackens, even though the employee does not live near Brackens and another driver told Brackens he saw where Brackens lived, even though he lives 20-25 minutes away. Brackens complains he has been drug tested more than other drivers even though he has had no accidents or incidents.

Brackens alleges that on November 1, 2018, he came into work late because he had been under a tornado watch/warning. He asserts that he notified Perez the night before, but that he did not receive a response. He asserts that Perez took his route and he was called by supervisor David Faletta who told him that Demarest wanted to see him in the office. The meeting was held with both Faletta and Demarest. Brackens complains he was singled out and that he was falsely persecuted.

Brackens alleges that he was terminated from his employment without explanation and that Stericycle denied him unemployment benefits.

On April 29, 2019, Brackens filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") asserting discrimination based on retaliation. On August 13, 2019, the EEOC issued a Dismissal and Notice of Rights, closing its file on Brackens' charge. This lawsuit followed on November 6, 2019. On the form Complaint for Employment Discrimination, Brackens alleged the following discriminatory conduct: termination of employment, unequal terms and conditions of employment, and retaliation. Brackens is proceeding *pro se*, without the assistance of counsel.

Presently before the court is the defendants' Motion to Dismiss. They argue that Brackens' retaliation claim fails because he has not alleged that he engaged in protected activity. To the extent he is asserting a claim for discrimination based on his allegations that he was treated differently from Arceneaux, they argue that his claim must fail because he has not alleged that he is a member of a protected class. Defendants further argue that Brackens' Title VII claims against Demarest, Perez, Falletta, and Arceneaux, should be dismissed because Title VII does not impose individual liability on agents of an employer. Defendants argue that Brackens fails to allege sufficiently outrageous conduct to state a claim for intentional infliction of emotional distress. And finally,

they argue that Brackens has failed to allege sufficient facts to establish any of the elements of a defamation claim.

In opposition, Brackens asserts that he engaged in protected activity by filing a charge with the EEOC. He adds that he also made an anonymous report to Human Resources "about the illegal, questionable and negative practices of Management and Employees." He asserts that the defendants were made aware of who filed the anonymous report and reprisal and harassment ensued. He appears to concede that he does not allege that he experienced mistreatment based on his race, color, religion, sex, or national origin. (Rec. Doc. 17, at 7). Instead, he says, his claims are "solely based on retaliation and harassment due to filing a report to HR." Id. He adds that the race, color, sex, or nationality of the parties is of "no significance" to him and he insists that retaliation and harassment can be performed by those of the same race, color, sex, or nationality. Id.at 9.He argues that his Complaint contains allegations that rise to the level of extreme and outrageous conduct such as the defendants changing his route unexpectedly, defendants denying him routes and making him sit in the yard, being threatened and reprimanded with write ups, and being stalked by Stericycle employees who appeared near his residence. He further argues that he states a claim for defamation because defendants administered fraudulent write ups, including falsely stating that Brackens used profanity in a phone call with Perez. He asserts that this could hinder his future employment.

<u>Law and Analysis</u>

1. *Standard for Motion to Dismiss*

"[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." <u>Cuvillier v. Taylor</u>, 503 F.3d 397, 401 (5th Cir.

2007) (quotation marks and ellipsis omitted). Accordingly, Rule 12(b)(6) allows a defendant to move for expeditious dismissal when a plaintiff fails to state a claim upon which relief can be granted. In ruling on a 12(b)(6) motion, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." In re Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted). Further, "[t]o survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to state a claim to relief that is plausible on its face. Factual allegations must be enough to raise a right to relief above the speculative level." Id. (citation, footnote, and quotation marks omitted). On that point, the United States Supreme Court has explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations and quotation marks omitted).

2. *Disparate Treatment Claims under Title VII*

Title VII provides that

It shall be an unlawful employment practice for an employer--
**. . .** to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin;

42 U.S.C. § 2000e-2(a)(1). In a disparate treatment case, "to establish a *prima facie* case of discrimination on the basis of race or national origin, a plaintiff must show he or she was: (1) a member of a protected class; (2) qualified for the position held; (3) subject to an adverse

5

employment action; and (4) treated differently from others similarly situated." Abarca v. Metro. Transit Auth., 404 F.3d 938, 941 (5th Cir. 2005).

Here, Brackens alleges that his supervisors treated him unfairly by showing favoritism to his co-worker Arceneaux, singling him out for meetings, and falsely writing him up. But Brackens has not alleged that he is a member of a protected class. That is, he has not alleged that the favoritism and harassment he complains of occurred because of his race, color, religion, sex, or national origin. In fact, he concedes that the race, color, sex, or nationality of he and the defendants was of "no significance" to him. (Rec. Doc. 17, at 9). Because an adverse employment action is only unlawful under Title VII if it is taken because of the employee's race, color, religion, sex, or national origin, Brackens has failed to state a claim for discrimination under Title VII.

3. *Title VII Retaliation*

Under Title VII, it is an "unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter . . . ." 42 U.S.C. § 2000e-3(a). "To establish a *prima facie* case of retaliation, a plaintiff must show that (1) she participated in a Title VII protected activity, (2) she suffered an adverse employment action by her employer, and (3) there is a causal connection between the protected activity and the adverse action." Stewart v. Mississippi Transp. Comm'n, 586 F.3d 321, 331 (5th Cir. 2009). "Protected activity is defined as opposition to any practice rendered unlawful by Title VII, including making a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII." Ackel v. Nat'l Commc'ns, Inc., 339 F.3d 376, 385 (5th Cir. 2003). Thus, making a complaint about unfair treatment is only a "protected activity" for purposes of a retaliation claim if the employee complains "about race, color, religion, sex, or national origin discrimination." See Brown v.

6

United Parcel Serv., Inc., 406 F. App'x 837, 840 (5th Cir. 2010) (holding that an employee's complaints about unfair work distribution, unpaid overtime, and selective enforcement of a lunch policy were not protected by Title VII because such practices are not prohibited by Title VII); see also Smart v. Geren, 350 F. App'x 845, 846 (5th Cir. 2008) (holding that the employee's filing of two "unfair labor practices charges" did not establish a "protected activity" because "nothing in either form indicates that the complaints concerned the infraction of a right with redress under Title VII").

Here, Brackens has identified his complaint to Human Resources and his charge to the EEOC as "protected activities" under Title VII. However, there is no indication that his human resources complaint raised a concern about race, color, religion, sex, or national origin discrimination. Instead, Brackens alleges that he complained about "the misconduct of supervision/employee-related situations." As noted above, Brackens has conceded that his race, color, sex, or nationality were of "no significance." Because the human resources complaint did not concern Brackens' rights under Title VII, it is not a "protected activity" for purposes of establishing a retaliation claim under Title VII. Similarly, the filing of the EEOC charge is not a protected activity because Brackens was not opposing a practice rendered unlawful by Title VII. His EEOC charge only checked the box for "retaliation," and the retaliation claim was based on the human resources complaint that did not concern race, color, religion, sex, or national origin discrimination. In sum, because Brackens has not alleged that he opposed discrimination based on race, color, religion, sex, or national origin, his Complaint fails to allege any "protected activity" that could render resulting retaliation unlawful under Title VII. Accordingly, Brackens has failed to state a claim for retaliation under Title VII.[1]

---

[1] The court notes that as the defendants point out, "relief under Title VII is only available against an employer, not an individual supervisor or fellow employee." Umoren v. Plano Indep. Sch. Dist., 457 F. App'x 422, 425 (5th Cir.

*4. Intentional Infliction of Emotional Distress*

To prove a claim for intentional infliction of emotional distress ("IIED") under Louisiana law, the plaintiff must establish "(1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct." White v. Monsanto Co., 585 So. 2d 1205, 1209 (La. 1991). The Louisiana Supreme Court has explained that "[t]he conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." Id. Thus, in the employment context, courts have held that "[c]onduct in the workplace, even if calculated to cause some degree of mental anguish, will rarely be so severe that it will rise to the level of 'outrageous conduct.'" Barber v. Marine Drilling Mgmt., Inc., No. CIV.A. 01-1986, 2002 WL 237848, at *8 (E.D. La. Feb. 15, 2002).

For example, in Stewart v. Parish of Jefferson, the plaintiff alleged that his supervisors had "engaged in a 'campaign' of harassment," including raising their voices when questioning the plaintiff, increasing his workload, pressuring him to take a demotion, and eventually terminating him from employment. 95-407 (La. App. 5 Cir. 1/30/96), 668 So. 2d 1292, 1294, writ denied, 96-0526 (La. 4/8/96), 671 So. 2d 340. The trial court held that the plaintiff did not meet his burden of proving intentional infliction of emotional distress, and the court of appeals affirmed. Id. In contrast, the court in Branden v. F.H. Paschen, S.N. Nielsen, Inc., found that the plaintiff had stated

---

2012) (quoting Foley v. Univ. of Houston Sys., 355 F.3d 333, 340 (5th Cir. 2003)). However, because the court finds that Brackens has failed to state a claim for retaliation or discrimination under Title VII, the court does not need to address defendants' alternative argument that Brackens' Title VII claims against Demarest, Faletta, Perez, and Arceneaux should be dismissed because there is no individual liability under Title VII.

a claim for intentional infliction of emotional distress where he alleged that after he raised concerns about his employer receiving illegal kickbacks from certain subcontractors, his supervisor threatened his job, threatened him with physical harm, and threatened him with the "the fate suffered by a man who was shot in the head." No. CV 19-2406, 2019 WL 1760694, at *3-4 (E.D. La. Apr. 22, 2019).

Here, Brackens has alleged that his hours were cut or that he was overloaded with hours, that he was singled out for in person meetings, that he was persecuted for his mistakes, that he was subjected to false write ups, and that his routes were changed without a legitimate reason. He alleges that his truck was vandalized, although he offers no details as to what was done to his truck, and why he has reason to believe that his co-workers or supervisors were responsible. He also alleges that at least two Stericycle employees observed him at his residence even though they do not live nearby—incidents he describes as "stalking." These allegations, even if true, do not rise the level required to state a claim for intentional infliction of emotional distress. They fall into the category of "insults, indignities, threats, annoyances, [and] petty oppressions" that do not result in liability. White, 585 So. 2d at 1209. Accordingly, the court finds that Brackens has failed to state a claim for intentional infliction of emotional distress.

5. *Defamation*

To establish a claim for defamation under Louisiana law, "a plaintiff must prove the following elements: '(1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury.'" Schmidt v. Cal-Dive Int'l, Inc., 240 F. Supp. 3d 532, 542 (W.D. La. 2017) (quoting Kennedy v. Sheriff of E. Baton Rouge, 2005-1418 (La. 7/10/06), 935 So. 2d 669, 674). "[C]asual remarks made in informal conversation, even if they include unflattering words, do not

9

constitute actionable defamation." Barber v. Marine Drilling Mgmt., Inc., No. CIV.A. 01-1986, 2002 WL 237848, at *6 (E.D. La. Feb. 15, 2002) (quoting Guillory v. State Farm Ins. Co., 94-1405 (La. App. 4 Cir. 9/28/95), 662 So. 2d 104, 112). "To be considered 'published,' for purposes of a defamation claim, statements must be made to a third party, other than the person allegedly defamed." Id. Importantly, "intra-corporate communications fail to satisfy the 'publication' element of a cause of action for defamation" because such a communication, when among employees of a corporation and related to their duties for the corporation "'is merely a communication of the corporation itself.'" Id. (quoting Commercial Union Ins. Co. v. Melikyan, 424 So. 2d 1114, 1115 (La. Ct. App. 1982)).

As the defendants point out, Brackens' Complaint asserts that his reputation has been defamed, but does not identify specific false statements. For example, he alleges that he has been "lied on and stories have been fabricated about [him] that were told amongst others because none of them knew me." (Rec. Doc. 1-1, at 8). He does not explain what stories were told or to whom. In his opposition memorandum, Brackens submits the allegedly fabricated stories and false statements in his writeups were defamatory. For example, he argues that Perez falsely claimed that he used profanity towards him in a phone call.[2] He argues that this can hinder him in his future employment. He also argues that he was defamed when defendants published his name with the word "terminated" on a "safety training" roster weeks after his termination from employment.[3]

As to the allegedly false write ups, defendants argue that these cannot support a claim for defamation because they do not satisfy the "published" element of the claim. They insist that statements made by company personnel in a performance review to a human resources department

---

[2] The court notes that this specific allegation does not appear in Brackens' Complaint, although his Complaint does allege that he was forced to sign "fraudulent paperwork and write-ups."
[3] These allegations do not appear in Brackens' Complaint.

10

are not statements made to third parties. E.g., Garrett v. Celanese Corp., No. 3:02-CV-1485-K, 2003 WL 22234917, at *5 (N.D. Tex. Aug. 28, 2003) (holding that a plaintiff's allegation that a performance review contained false information did not satisfy the "publication" element of a defamation claim under Texas law because plaintiff had not alleged that the performance review was prepared outside the course of the company's business or that her personnel file had been published to anyone other than the officers of the company). They argue that as to his name appearing with the word "terminated," this cannot sustain a claim for defamation because Brackens does not dispute that he was terminated from employment.

The court finds that Brackens has failed to state a claim for defamation. The Complaint does not allege any specific false statements that were published to third parties. Assuming that Brackens could amend his Complaint to allege the facts he argues in his opposition, these facts are also insufficient. As to the alleged false statements in his write ups, according to Brackens, these were made by Stericycle employees for the purpose of the write up. There is no indication these write ups were shared outside of the company. Thus, these statements amount to intra-corporate communications by company employees related to their duties for the corporation, which are not considered communications to third parties. See Barber, 2002 WL 237848, at *6. Similarly there is no suggestion that the "safety training" roster reflecting Brackens as "terminated" was published outside of the company. Moreover, as defendants point out, Brackens does not dispute that he was terminated from employment, which means the statement is not false. Neither the allegations in the Complaint or the assertions made in opposition are sufficient to state a claim for defamation. Brackens' defamation claims must also be dismissed.

## Conclusion

For the foregoing reasons, the court finds that Brackens has failed to state a claim for

discrimination or retaliation under Title VII, for intentional infliction of emotional distress, or for defamation. Accordingly, defendants' Motion to Dismiss is GRANTED. Brackens' Complaint is hereby dismissed with prejudice.

New Orleans, Louisiana, this 8th day of April, 2020.

                                                  Janis van Meerveld
                                     United States Magistrate Judge